UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LONE STAR WEAPONS ACADEMY L.L.C., dba SHEEP DOG MARKET<br>    Plaintiff,<br><br>v.<br><br>QUINTAL INTERNATIONAL, INC.<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:15-cv-191-Y |

**PLAINTIFFS' RESPONSE and OBJECTION TO
DEFENDANT'S 12(b)(6) MOTION TO DISMISS (ECN NO. 28) WITH BRIEF**

COME NOW Lone Star Weapons Academy L.L.C., dba Sheep Dog Market and Lord Daniel Sportswear, Inc. (corporately, "Plaintiffs") in the above-numbered and styled cause, to file their objection and response ("Objection") to defendant's second 12(b)(6) Motion to Dismiss and Memorandum in Support Thereof ("Motion") filed by defendant Quintal International, Inc. ("Defendant" or "Quintal"), Document 28 on the Court's docket, which asks this Court to dismiss the anti-trust claims discussed in Plaintiffs' Second Amended Complaint.

Plaintiffs have included with this Objection is Motion to Strike the Declaration of Ryan T. Beard, Document 28-1 in the Court's docket, as the statements made within it are not based on personal knowledge.

# Contents

I.   **SUMMARY** ................................................................................................................... 3
II.  **ARGUMENT** ................................................................................................................ 4
   A.   Defendant misstates Plaintiffs' argument by asserting Plaintiffs claim *all* cease-and-desist letters are violations of anti-trust laws. .............................................. 4
   B.   Plaintiffs' antitrust claims stem from the assertion that Defendant's actions are threats of sham litigation. ................................................................................... 5
   C.   Defendant's argument assumes its registered mark will withstand the Court's scrutiny. ............................................................................................................ 7
   D.   This case is easily distinguished from *Canada Pipeline*. .................................... 9
   E.   Plaintiffs have properly pled claims under the Sherman Act. ........................ 12
   F.   Plaintiffs object to the Motion as written based on Rule 10(b). ..................... 12
   G.   Plaintiffs object to the Declaration of Ryan T. Beard (ECF No. 28-1). ........... 12
III. **CONCLUSION** .......................................................................................................... 14

**Cases**
*Credit Counseling Ctrs. of Am. v. National Found. for Consumer Credit*, 1997 U.S. Dist. LEXIS 4957 (N.D. Tex. Apr. 1, 1997) ................................................................. 11
*Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (U.S. 1961) ............................................................................................................................. 5
*Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 273 (S.D.N.Y. 1999) . 6
*FCA Inv. Co. v. Baycorp Advantage*, 2005 U.S. Dist. LEXIS 48208 (S.D. Tex. July 8, 2005). ......................................................................................................................... 12
*Goss Int'l Ams., Inc. v. MAN Roland, Inc.*, 2008 U.S. Dist. LEXIS 26624, *13 (D.N.H. 2008) ............................................................................................................... 7
*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993) ........................................................ 6
*Santander Consumer USA Inc. v. Walsh*, 762 F. Supp. 2d 217, 237 (D. Mass. 2010) ................................................................................................................................... 11
*Shirokov v. Dunlap, Grubb & Weaver PLLC*, 2012 U.S. Dist. LEXIS 42787, *59 (D. Mass. Mar. 1, 2012) .................................................................................................... 11
*Thermos Co. v. Igloo Prods. Corp.*, 1995 U.S. Dist. LEXIS 14221, *6-7 (N.D. Ill. Sept. 27, 1995) .................................................................................................................... 12
*Thermos Co.*, 1995 U.S. Dist. LEXIS 14221, *16 (N.D. Ill. Sept. 27, 1995) ............. 6, 12

**Statutes**
28 U.S.C. § 1746 ............................................................................................................ 13
Tex. Bus. & Com. Code Ann. § 15.05(d)(3) .................................................................... 8
Texas Free Enterprise and Antitrust Act of 1983 .................................................. 3, 4, 5, 7

## I.  SUMMARY

1.  Plaintiffs' complaint includes anti-trust causes of action under the Texas Free Enterprise and Antitrust Act of 1983 and the Sherman Act, based on Defendant's pattern of misusing its registered mark to threaten small t-shirt vendors into giving up valuable sales when there is no colorable trademark infringement.

2.  Defendant argues that, because it has a registered trademark, Defendant can seek to enforce its mark, irrespective of whether its legal threats to unsophisticated t-shirt vendors is even colorably valid, without fear of violating anti-trust law. Defendant also argues that Plaintiffs have not pled sufficient facts to support a claim pursuant to the antitrust claims.

3.  Plaintiffs respond that Defendant's attempt to shoehorn this dispute into a mere trademark dispute fails because Defendant's actions are not those of an honest trademark holder enforcing legal rights in a single case, but are the actions of a dishonest trademark bully which is attempting to abuse fraudulently obtained rights in a way not permitted by law, i.e., when no consumer confusion is likely.

4.  Plaintiffs also distinguish this case from Defendant's cited case on the matter, *RJ Mach. Co. v. Canada Pipeline Accessories Co. Ltd.*, No. A-13-CA-579-SS, 2013 WL 8115445 (W.D. Tex. Nov. 22, 2013), an honest trademark case revolving around whether one party could require another party to find another name for competing product and in which both parties were using similar marks to show the source of their respective products.

## II.  ARGUMENT

### A. Defendant misstates Plaintiffs' argument by asserting Plaintiffs claim *all* cease-and-desist letters are violations of anti-trust laws.

5.  Defendant's argument assumes a straw man argument against Plaintiffs' claims with its observation that it is not a violation of the Texas Free Enterprise and Antitrust Act of 1983 for an owner of a federal registered trademark to enforce its rights through cease-and-desist letters, specifically citing *RJ Mach. Co v. Canada Pipeline Accessories Co. Ltd.*, No. A-13-CA-579-SS, 2015 U.S. Dist. LEXIS 41303 (W.D. Tex. Mar. 31, 2015) and the Noerr-Pennington doctrine.

6.  Defendant's argument targets allegations not made by Plaintiffs, who have not claimed that sending demand letters alleging trademark infringement to those who are infringing another's trademark can be the basis of an antitrust claim.

7.  Plaintiffs are alleging that, *even if Quintal's mark is valid*, Plaintiffs' use of the phrase "BACK TO BACK WORLD CHAMPS" ornamentally on the front of a shirt cannot even be colorably claimed to be used as a source identifier used by Plaintiffs, and that Defendant *knows* that its demand letters are without legal basis, and that Defendant has adopted a business model in which it bullies small shirts vendors with threatened federal suits filed in California, though it has never filed such a suit, and likely never will.

8.  Though Plaintiffs have asked that Quintal's mark at issue be cancelled, Plaintiffs do not contend that the mark must be cancelled to win the antitrust cause of action. Plaintiffs admit that parties can have honest disputes about trademarks without the dispute rising to an anti-trust claim.

9.  In this suit, Plaintiffs complain that the pattern of behavior is not an honest dispute, or even *one* dishonest dispute, but rather *an entire series of dishonest disputes*, in that Defendant's business practice includes multiple dishonest trademark allegations and threatened suits which it never would file because its principal and its counsel know that such a suit would never succeed. This series of facts remove it from the ambit of any case law cited by Defendant.

10. However, Plaintiffs have also argued that Defendant's mark should be cancelled because it was obtained illegally. If Plaintiffs succeed, then Defendant's argument that it has a legal right to enforce trademark rights will fail. Defendant has not provided any authority for the proposition that a party can fraudulently obtain a federal registration and prevail against anti-trust claims. And while Plaintiffs may win their claim for a declaration of non-infringement, that claim would be but one element in the adjudication of the anti-trust claims.[1]

11. Thus, Plaintiffs are not claiming that defendant has violated the Sherman Act and Texas Free Enterprise and Antitrust Act of 1983 by merely sending cease-and-desist letters on a single trademark dispute.

**B. Plaintiffs' antitrust claims stem from the assertion that Defendant's actions are threats of sham litigation.**

12. Defendant's Motion cites the Noerr-Pennington Doctrine in its defense, which excepts attempts to lobby government entities from anti-trust claims. See *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (U.S. 1961).

---

[1] Defendant's citation to *RJ Mach. Co v. Canada Pipeline Accessories Co. Ltd.*, No. A-13-CA-579-SS, 2015 U.S. Dist. LEXIS 41303 (W.D. Tex. Mar. 31, 2015) is addressed *infra*, but it is worth noting here that the *Canada Pipeline* case did not involve a business model of sham infringement claims.

13. However, when *Noeer* is cited to support exceptions, whether to litigation or lobby attempts, the threatened litigation must be in "good faith". *Thermos Co. v. Igloo Prods. Corp.*, 1995 U.S. Dist. LEXIS 14221, *12 (N.D. Ill. Sept. 27, 1995).

14. As *Thermos* points out, the "sham" lawsuit is an exception to the Noerr-Pennington Doctrine. *Id*. The Supreme Court has established a stringent test for "sham" litigation, requiring proof that: (1) the suit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) there was subjective intent to use the litigation to interfere directly with the business relationships of a competitor. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993), as discussed and explained further in *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 273 (S.D.N.Y. 1999).

15. In *Thermos*, the court observed that Igloo made conclusory allegations lacking detail and much more detailed pleadings would be needed to state a cause of action for anti-trust that would survive a motion to dismiss. *Thermos Co.*, 1995 U.S. Dist. LEXIS 14221, *16 (N.D. Ill. Sept. 27, 1995). However, *Thermos* does not teach that *all* such claims are insufficient and ought to be dismissed perfunctorily. It stated quite the opposite, discussing the need to show the threat is a sham, and requiring detailed pleadings. *Id*.

16. For Plaintiffs to maintain their antitrust claims, they must show that the potential claim against them is baseless. Borrowing from patent case law, an infringement suit would be objectively baseless when the potential infringement

plaintiff knows either that the trademark is invalid or not infringed. *Goss Int'l Ams., Inc. v. MAN Roland, Inc.*, 2008 U.S. Dist. LEXIS 26624, *13 (D.N.H. 2008). In this case, Quintal knows well that the ornamental use of a popular slogan used on the front of a shirt or hat is not considered a source indicator and its threat of infringement is empty, *even if Quintal's mark is found to be valid*.

17. In the instant case, Plaintiffs have stated with great specificity the details of the parties' interactions. Plaintiffs have informed the Court that they sell shirts decorated with the phrase associated with defendants' mark and provided samples.

18. As discussed above, Defendant's infringement allegation is baseless. No reasonable person would view the attached exhibits, read the slogan and believe that there is a source for the shirts that is called "BACK TO BACK WORLD WAR CHAMPS", and that said organization is the source for the shirts, any more than they would think that a shirt with the slogan "America the Beautiful" or "USA #1" is a source for shirts.

19. In addition, this case shows a subjective intent by Defendants to interfere with the business relationships of Plaintiffs' vendors, as stated in the Amended Complaint and shown in its attached exhibits, as Defendants seek the names of its victims' sources, so it can then chase additional victims.

**C. Defendant's argument assumes its registered mark will withstand the Court's scrutiny.**

20. Quintal asserts that the phrasing of the Texas Free Enterprise and Antitrust Act of 1983 protects Quintal's actions, quoting the portion stating that the Act shall

"not be construed: ... to affect or impair any right previously legally acquired." TEX. BUS. & COM. CODE ANN. § 15.05(d)(3). Quintal assumes that the right was legally acquired. If Texas wanted to make this rule to always apply, even when trademarks were acquired illegally, it could have left the phrase "legally acquired" out of the law, but it did not. Plaintiffs have alleged that the mark was fraudulent acquired and seek its cancellation, challenging Quintal's claim that it has a "right previously legally acquired," so Defendant's request that this Court dismiss the anti-trust claims is not ripe.

21. In addition, a party which owns a registered trademark does not acquire a right to prevent *all* use of a registered mark, but only use of a mark that is likely to confuse or deceive consumers.[2] Thus, the issue of whether Defendant's mark was legally acquired is not dispositive, but whether the legal right which Defendant acquired allows monopoly control of a popular phrase not used to designate source ornamentally on t-shirts.

22. Quintal's position is that this dispute is a mere trademark dispute, where one party has a registered mark and another party is using that mark, but challenging its validity.[3] Quintal's treatment of Plaintiffs' claims ignores that good faith pleading by Plaintiffs that Quintal's mark is not only unregisterable due to its generic nature, but that it was also fraudulently obtained.[4] This allegation distinguishes Plaintiffs' claims from all case law cited by defendants, and puts into

---

[2] As discussed in 15 USC § 1114, the Lanham Act's prohibition is in the commercial use of the mark "with which such use is likely to cause confusion, or to cause mistake, or to deceive."
[3] Motion, p.2, para. 2 (ECN No. 28).
[4] Plaintiff's Second Amended Complaint, paragraphs 41-42 (ECN No. 27)(Note that Plaintiffs have inadvertently filed two versions of their complaint named as the 'Second Amended'. Document 27 is the active pleading.)

question the issue of "legally acquired" that Defendant wants to assume in its defense.

23.   But Plaintiffs have alleged that Quintal is acting as though it is enforcing a design patent on the basis of a trademark, as a design patent would give Defendants the rights that it is claiming in this suit.

24.   Plaintiffs also allege that defendant knows that Quintal is well aware that its infringement claims are sham, and thus this case is not purely about trademark.

25.   Even if Defendant wins the validity challenge against its mark by Plaintiffs, Plaintiffs are confident that they are not infringing Defendant's mark. This case is therefore not only about trademark infringement, but also about ending Defendant's practice of extorting unsophisticated shirt makers into buying peace to avoid expensive federal litigation with no obvious means of recovering attorney fees in order to continue making a profit on a single shirt design even a threatened vendor succeeds in defending against the infringement claim.

**D. This case is easily distinguished from *Canada Pipeline* because Defendant's legal threats are sham, the trademark dispute is based on a fraudulent registration, a pattern of abusive trademark threats, and Plaintiff cannot avoid the infringement claim by marketing under a different name.**

26.   Defendant quotes extensively from *RJ Mach. Co v. Canada Pipeline Accessories Co. Ltd.*, No. A-13-CA-579-SS, 2015 U.S. Dist. LEXIS 41303 (W.D. Tex. Mar. 31, 2015) to support its argument that the case at bar is a valid trademark dispute, but ignores the distinguishing characteristics between Quintal's pattern of behavior and the very real trademark dispute that was present in *Canada Pipeline*.

27.     In *Canada Pipeline,* if the court had confirmed the validity of the Canada Pipeline's marks, the trademark dispute would then be set in earnest, in that both parties were undoubtedly using the marks in question for source identification and trade dress. The validity of the marks was challenged, but it was undisputed that both parties were using the same mark, and using the mark to designate origin. *Id*.

28.     As the Second Amended Complaint (ECN No. 27) now states, Plaintiffs have alleged that, even if this Court confirms the validity of Defendant's mark, Defendant still has no valid or even colorable trademark infringement case. Plaintiff is not using the trademark as a source indicator.

29.     Plaintiff has alleged that Defendant's registration was for litigation purposes and only recently filed for the purposes of litigation, as opposed to the more than a decade of use by the mark holder selling a popular product protected by patent in *Canada Pipeline. Id*. at ¶3.

30.     In granting the trademark holder's motion to dismiss, the court in *Canada Pipeline* stated that the challenger need only sell its products under a different name to avoid liability. *Id*. (*See* Order, Case No. 1:13-cv-00579-SS, Doc. 35, p.6.) In the present case, Defendant alleges that the Plaintiffs are infringing by placing a patriotic slogan on the front of a t-shirt and on caps – they cannot avoid the infringement claim by changing the name under which they sell their goods. That is, in fact, the argument against the infringement allegations. Defendant's allegations imply that the actual source of the products is irrelevant, when source designation is the entire point of trademark registration and protection.

31. Defendant's argument also ignores the many times that federal courts have recognized exceptions even when a trademark holder has a colorably valid claim. In *Credit Counseling Ctrs. of Am. v. National Found. for Consumer Credit*, 1997 U.S. Dist. LEXIS 4957 (N.D. Tex. Apr. 1, 1997), for example, the Dallas Division dismissed some of the anti-trust claims but refrained from ruling that all anti-trust claims based on trademark abuse and other activities in restraint in trade should be dismissed barring further discovery. *Id*. at 20.

32. While not controlling in this circuit, other courts have found that Noerr-Pennington Doctrine should be not be applied to protect a litigant which has a pattern of behavior that supports a finding of sham litigation tactics, which include in one case the practice of using lawsuits to threaten competitors, initiation of objectively unreasonable infringement lawsuits, and dismissal without payment. *Santander Consumer USA Inc. v. Walsh*, 762 F. Supp. 2d 217, 237 (D. Mass. 2010).

33. In addition, defendant's behavior mimics the behavior found in torrent copyright infringement allegation schemes, where a litigant threatens lawsuits for copyright infringement of pornographic materials that are embarrassing or have potentially high damages, but are rarely actually litigated. In such disputes, courts often refrain from applying the Noerr-Pennington doctrine, e.g., *Shirokov v. Dunlap, Grubb & Weaver PLLC*, 2012 U.S. Dist. LEXIS 42787, *59 (D. Mass. Mar. 1, 2012).

### E. Plaintiffs have properly pled claims under the Sherman Act.

34. As amended in Plaintiffs' Second Amended Complaint, Plaintiffs have addressed the Defendant's assertions regarding lack of necessary facts to support the claims, specifically providing the details discussed in *Thermos Co. v. Igloo Prods. Corp.*, 1995 U.S. Dist. LEXIS 14221, *6-7 (N.D. Ill. Sept. 27, 1995).

### F. Plaintiffs object to the Motion as written based on Rule 10(b).

35. Rule 10(b) requires that pleadings be written in numbered paragraphs. Plaintiffs have filed many pleadings without numbered paragraphs (ECF No. 12, 17, 24, 25 and 28). Though Defendant is numbering its sections, it habitually fails to number its paragraphs.

36. Plaintiffs recognize that writing styles differ, and do not contend that the Court is required to strike Defendant's pleadings, or that Plaintiffs were unable to discern what Defendant intended while responding. These two paragraphs are not an attempt to make much of little. Plaintiffs ask merely that Rule 10 be followed in the future, and if the Court grants Defendant's Motion, Plaintiffs ask that the Court require Defendant redraft its Motion so the record is more easily referenced.

### G. Plaintiffs object to the Declaration of Ryan T. Beard (ECF No. 28-1).

37. Defendant's Motion includes a statement calling itself an affidavit ("Beard's Statement", ECF No. 28-1). Beard's Statement is not an affidavit, as affidavits must be sworn in front of one authorized to administer an oath.[5]

---

[5] *FCA Inv. Co. v. Baycorp Advantage*, 2005 U.S. Dist. LEXIS 48208 (S.D. Tex. July 8, 2005).

38.     Beard's Statement is not a declaration, as nowhere does it state, "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct," as required by 28 U.S.C. § 1746.

39.     Even assuming that Beard's Statement was properly drafted or accepted, it includes testimony evidence that cannot be valid, in that Beard can only testify to that of which he has personal knowledge.

40.     Mr. Beard did not perform the registration of Quintal's mark. Nor was he the attorney who signed the cease-and-desist letter sent to either plaintiff. Nor is Mr. Beard even in the same law firm as the firm from which the cease-and-desist letter was sent. Nor is there any suggestion of any particularized supporting facts that might enable him to be able to say that he has personal knowledge of the information to which he offers testimony. Mr. Beard appears to have the same non-personal knowledge that anyone has by seeking the information from the United States Patent & Trademark Office website has. Thus, Beard's Statement cannot be corrected by merely adding the verbiage required by 28 U.S.C. § 1746.

41.     In spite of the argument above, Plaintiffs assume that opposing counsel can eventually redraft his Motion to eliminate this objection, and Beard's Statement can be replaced with a document that will perform its clearly targeted function of establishing that the United States Patent and Trademark Office has registered the mark that Defendants seek to enforce, if that is even necessary for the adjudication of Defendant's Motion.

42. In addition, Plaintiffs have judicially admitted that the letter attached as Exhibit 2 to Beard's Statement was sent to Plaintiffs at paragraph 29 of the Second Amended Complaint; the letter was filed by Plaintiff as ECF No. 15-3.

43. Plaintiffs include this section of its response because they wish to prevail on the merits of this case, rather than attempting to have documents struck. Therefore, Plaintiffs ask that the Court *accept* Beard's Statement for purposes of adjudication of Defendant's Motion. However, if the Court determines that it will grant Defendant's Motion and dismiss the anti-trust claims at this point in the proceedings based on a motion to dismiss before discovery, Plaintiffs ask that the Court require Defendant to redraft this portion of the Motion or eliminate it, to ensure that the Motion is adjudicated only on its merits.

### III. CONCLUSION

44. Plaintiffs can show Defendants' business model of extorting small damages from small shirt makers is a violation of Texas law and the Sherman Act, and claims thereto qualify for exemption from the Noerr-Pennington Doctrine as mere sham litigation.

45. This case is easily distinguished from the cases cited by Defendants in their Motion, as none of them include allegations that a trademark holder is attempting to enforce rights it does not have (ornamental use of a common slogan), using a trademark obtained fraudulently (claiming unsupportable use dates), in a consistent pattern against innumerable unsophisticated targets who are unlikely to discern that the claim of infringement is unsupportable. Unlike the case law

provided by Defendants, Plaintiffs have provided great detail in its pleadings distinguishing it even from cases Defendant has not cited.

46.     Plaintiffs pray that, in light of the Second Amended Complaint (ECF No. 27) and the arguments *supra*, the Court deny Defendant's Motion to Dismiss.


Dated: December 3, 2015

/s/ Warren V. Norred
Warren Norred, State Bar No. 24045094
NORRED LAW, PLLC
200 E. Abram, Ste. 300; Arlington, TX 76010
O: 817-704-3984; F: 817-524-6686
wnorred@norredlaw.com


**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2015, a copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system to all parties in interest.

/s/ Warren V. Norred